**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| CHARLIE J. HEASLET, JR., § | |
| PLAINTIFF, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:04-CV-0763-Y |
| § | |
| JO ANNE B. BARNHART, § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| DEFENDANT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND**
**NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.   STATEMENT OF THE CASE

Plaintiff Charlie J. Heaslet, Jr., brings this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of the Social Security Administration denying Heaslet's claim for disability insurance benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act.

Heaslet most recently applied for disability insurance and SSI benefits in July 2002, alleging

that he has been disabled since September 1, 1993.[1] (Tr. 203, 219). Heaslet's disability insured status expired December 31, 1998. (Tr. 217).

The Social Security Administration denied Heaslet's applications for benefits both initially and on reconsideration. Heaslet requested a hearing before an administrative law judge (the "ALJ"), and ALJ Randolph D. Mason held a hearing on August 13, 2003, in San Angelo, Texas. (Tr. 34). Heaslet was represented by an attorney. On September 12, 2003, the ALJ issued a decision that Heaslet was not disabled and was not eligible for disability insurance or SSI benefits. (Tr. 11D-11L). The Appeals Council denied Heaslet's request for review of his case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4).

B.   STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is

---

[1] Heaslet was approved for a period of disability that ended in 1993, and thereafter filed several unsuccessful applications, (Tr. 38), culminating with an unfavorable administrative determination in April 2000 that was subsequently affirmed by the district court. *See Haslett* [sic] *v. Barnhart*, No. 4:01-CV-207-Y (N.D. Tex. June 12, 2002).

severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). At the third step, disability will be found if a claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work. *Id.* A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence

is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.  ISSUES

Whether the ALJ correctly applied the law in finding that Heaslet has the residual functional capacity for a modified range of light work, and whether the ALJ's decision is supported by substantial evidence.

D.  ADMINISTRATIVE RECORD

1. Threshold Issue of Title II Eligibility and Relevant Dates for Medical History

Heaslet complains that the ALJ improperly limited his review of the record to medical evidence on or after July 2002. (Plf Br. at 4). To the contrary, the ALJ gave good reasons for limiting his review of the record.

Heaslet alleges that he is disabled by back pain and pinpoints the date of disability onset as September 1, 1993. (Tr. 29). However, the ALJ correctly noted that the principles of *res judicata* prohibited a finding of disability prior to April 28, 2000, the date on which another ALJ had issued a decision denying Heaslet's previous application for benefits.[2] (Tr. 11E). 20 C.F.R. § 404.957(c). Because Heaslet was last insured for disability insurance benefits on June 30, 1998 and the last unfavorable administrative decision was in April 2000, he cannot receive benefits under Title II of

---

[2] The ALJ found no good cause to reopen or reconsider Heaslet's earlier application. That determination is not subject to judicial review. *See Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 4**

the Social Security Act based on his most recent application. *See* 20 C.F.R. §§ 404.101(a), 404.131(a).

Because Heaslet was barred from receiving disability insurance benefits, the ALJ considered only Heaslet's application for SSI benefits and appropriately limited his review to evidence as it pertained to Heaslet's condition on and after the date he filed his SSI application. (Tr. 11H). When a claimant files an application in a month in which he meets all requirements for SSI eligibility, the first month for which benefits can be paid is the month following the month in which the application was filed--regardless of how far back in time disability may extend. 20 C.F.R. § 416.335.

Heaslet's argument that the ALJ erred in limiting his review to evidence concerning Heaslet's disability on or after July 2002 is meritless.

   2.   Medical Documentation

Heaslet has a lengthy history of back problems, and since 1996, has been under the care of Karen Burroughs, M.D., for management of his back pain. (Tr. 46, 152). During an office visit with Burroughs in February 2002, Heaslet complained of back pain, stiffness, muscle spasms, radicular leg pain, and numbness and weakness in his legs. He reported that cold weather made his pain worse. (Tr. 111). His current medications included Effexor, Hydrocodone tablets, and Ultram, and his pain was considered to be under fair control. On examination, Heaslet was appropriately groomed and in no apparent distress. His gait was slowed and he used a cane for stability. He exhibited decreased range of motion in his neck and back, and he was tender to palpation of his lower lumbar spine. Muscle strength was 5/5 in all major muscle groups. Cranial nerves, motor and sensory function, reflexes, gait and coordination were all noted to be intact. (Tr. 111).

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 5**

In April, Heaslet returned with similar complaints as documented in February plus he reported worsening pain between his shoulder blades with numbness in his hands bilaterally. Burroughs made observations similar to those reported in February, including a decreased range of motion in Heaslet's neck and back and no impairment in muscle strength testing in any major muscle groups. A neurological assessment again showed Heaslet to be intact. (Tr. 109). Burroughs made no changes to Heaslet's treatment regimen.

During an office visit on June 26, 2002, Heaslet again complained of back pain, stiffness, muscle spasms, radicular leg pain and numbness, and weakness in his legs. He reported being able to keep up with his daily activities, but little else. He denied any weakening in muscle strength. Burroughs noted that Heaslet's pain was fairly well controlled. (Tr. 107). On examination, Heaslet exhibited a slowed gait and used a cane for stability. He also demonstrated decreased range of motion in his neck and tenderness to palpation in his lumbar spine, but muscle strength was 5/5 in all muscle groups. A neurological evaluation showed motor function, sensory function, reflexes, gait and coordination to be intact. (Tr. 107). Burroughs recommended possible medication changes, but Heaslet was not interested in changing his medications. (Tr. 108). Heaslet's complaints remained consistent during additional office visits in August 2002, October 2002, and January 2003. (Tr. 180-85). Burroughs' examination results and observations also remained essentially unchanged. (Tr. 189).

Burroughs completed a questionnaire dated October 28, 2002. She opined that Heaslet suffered from chronic low back pain and his prognosis was poor. (Tr. 198). Burroughs indicated that Heaslet's pain and other symptoms were severe enough to constantly interfere with his ability

to maintain attention and concentration, but he was considered capable of performing low stress jobs. (Tr. 199). Burroughs opined that Heaslet could sit for fifteen minutes at a time (for a total of about two hours each day) and stand for ten minutes at any one time (for a total of about two hours each day) before needing to change positions. Heaslet would need to walk around for a few minutes as often as every fifteen minutes. (TR .200). Burroughs also opined that Heaslet needed a job that would permit him to change positions at will and take up the three unscheduled work breaks during an eight-hour workday. She indicated that Heaslet needed to use an assistive device while standing or walking, and she limited Heaslet to lifting no more than ten pounds and only occasional turning or rotation of his neck. Heaslet was considered incapable of stooping, crouching, squatting, or climbing ladders or stairs. (Tr. 201). Burroughs estimated that Heaslet would miss more than four days of work each month due to his impairment, and also noted that Heaslet used medications that could affect his concentration and energy levels. (Tr. 201).

Heaslet saw Burroughs again on March 14, 2003 and reported doing worse. He complained of constant, severe, throbbing, aching and stabbing pain in his cervical and lower lumbar spine. (Tr. 176). He also reported stiffness, muscle spasms, radicular leg pain, and numbness and weakness in his legs. He denied having any pain, numbness or weakness in his arms or experiencing incontinence. Narcotic pain medications provided some relief, but Heaslet complained that his pain was worse with walking, flexion or extension of his back, and movement. He demonstrated normal range of motion in all major muscle groups, but complained of pain with range of motion testing in his neck and back. Evaluation of his motor and sensory function, reflexes, gait and coordination showed Heaslet to be intact from a neurological standpoint. (Tr. 177).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 7**

3. Administrative Hearing

Heaslet was born on December 11, 1957. He quit high school in the eleventh grade, but obtained his GED. (Tr. 37). He testified that he worked part-time in 1998 as a tractor driver, but otherwise had not been employed since 1993.

Heaslet testified that he used pain medication and walked with the use of a cane. He estimated that he could walk 100 or 200 feet with the cane to assist him before low back pain would require him to stop. (Tr. 42). He testified that his back pain was worse than it used to be and his neck became stiff if he held his head in one position too long. (Tr. 43). On a scale of one to ten, with ten being the worse pain, Heaslet rated his low back pain as an eight or nine without pain medication. His pain level was a four, five or six when he took his pain medication. (Tr. 45). He did not think he could lift a gallon of milk in both hands because the weight would pull on his lower back. Heaslet underwent cervical surgery in 1989. (Tr. 43). His physicians had advised him that they would perform additional back surgery when the pain became intolerable for him, but had also advised him that he would probably continue to have pain even after the surgery. (Tr. 52).

Heaslet testified that he slept about four hours each night. He arose around 8:30 or 9:00 a.m. to take his medications. He lived with his daughter and was unable to assist the family with the housework, yard work, or grocery shopping. (Tr. 43, 44). He testified that he was able to shower and tend to his own personal hygiene, but he moved slowly. (Tr. 50). Heaslet had no hobbies, and estimated that he spent three-fourths of the day in bed or in a recliner. He testified that his medications made him groggy. (Tr. 44, 51).

Vocational expert Barbara Dunlap testified and identified Heaslet's past relevant work

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 8**

experiences as a warehouse worker as an unskilled job requiring medium exertion. (Tr. 54). Heaslet's work operating a tractor was semiskilled work that also required medium exertion. (Tr. 54). The ALJ asked Dunlap to consider the following hypothetical:

> An individual with a high school equivalent education, past work as you have described, and 44 years of age at the time in question. Let's assume this hypothetical person is only capable of light work requiring a low-stress situation with frequent opportunities to sit or stand, and lower end of detailed instructions. Would there be any other work in the national economy such an individual would be capable of performing?

(Tr. 54). Dunlap identified unskilled work as a cashier, with 2,000-4,000 jobs in Texas and 50,000-60,000 jobs nationally. Other suitable jobs included sorter/inspector positions, with 4,000-6,000 jobs in Texas and 60,000-90,000 jobs nationwide, and simple assembly or hand labor positions, with 4,000-6,000 jobs in Texas and 60,000-90,000 jobs nationwide. (Tr. 54-55). Suitable sedentary positions included additional sorter/inspector positions, hand laborer, and surveillance system monitor. (Tr. 55).

    4. Administrative Decision

The ALJ determined that Heaslet had not engaged in substantial gainful activity since applying for SSI benefits in 2002. (Tr. 11F). Heaslet alleged that he was disabled by a back disorder, osteoarthritis, and depression, and the ALJ agree that Heaslet had severe impairments. However, the ALJ also found from the available medical evidence that the impairments did not meet or equal the severity of any per se disabling listed impairment. (Tr. 11F). The ALJ concluded that Heaslet retained the residual functional capacity for light work activity, modified by his need for low stress situations, a frequent sit/stand option, and tasks at the lower end of detailed instruction. (Tr.

11I). Although Heaslet could not perform his previous work with these restrictions, his RFC permitted the performance of other work available in the national economy. (Tr. 11J-11K). Accordingly, the ALJ found Heaslet was not disabled and concluded that Heaslet was not entitled to disability insurance or SSI benefits. (Tr. 11L).

E.   DISCUSSION

Heaslet asserts that the ALJ's determination that he can perform light work activity is unsupported by substantial evidence and is a product of legal error. Heaslet specifically complains of the ALJ's failure to assign controlling weight to Burroughs' opinions, and he asserts that the limitations placed on him by his physician preclude even sedentary work activity.

The ALJ must weigh a medical source's assessment in accordance with the administrative regulations, and provide explanations for accepting or rejecting the medical source's opinion. 20 C.F.R. § 416.927; SOCIAL SECURITY RULING 96-5p. But the law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). In fact, an ALJ may completely or partially discount a treating physician's opinion for good cause, including disregarding statements which are unsupported by the evidence of record. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The weight to be given a physician's statement depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment or impairments. *See generally* 20 C.F.R. §§ 404.1527, 416.927.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 10**

The ALJ acknowledged his responsibility to consider all medical source statements in accordance with the Social Security regulations and rulings. (Tr. 11H). The ALJ also reviewed Burroughs' opinions and expressly gave those opinions considerable weight in assessing Heaslet's limitations. (Tr. 11I). However, the ALJ took issue with some of Burroughs' more specific findings and observed that Burroughs had used the exact same language in describing each of Heaslet's follow-up visits in 2002 and 2003. (Tr. 11H-11I). With respect to Heaslet's use of a cane for purposes of stability, the ALJ noted that Heaslet's muscle strength, motor, and sensory function were consistently found to be intact. (Tr. 11I). The ALJ also noted that there were no diagnostic tests to support restricting Heaslet to sitting or standing no more than two hours each day, and no physician had deemed it necessary to order x-rays, a computed tomography (CT) scan or magnetic resonance imaging (MRI). Additionally, Heaslet's pain was under fair control with medication. Heaslet reported that he participated in daily activities and he declined to make recommended changes to his medications. (Tr. 11I). The ALJ agreed that Heaslet probably had unspecified depression and concentration problems due to pain and his medications, and accordingly, concurred with Burroughs' opinion that high-stress jobs were unsuitable. (Tr. 11I).

The ALJ sufficiently explained the weight he gave to Burroughs' opinions and appears to have given due consideration to the medical reports and other evidence relevant to Heaslet's claim. *Cf. Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). Contrary to Heaslet's assertion, ALJ Ward did not "pick and choose" only the parts of the medical record to support the outcome. Rather, he methodically performed the required five step analysis and outlined Heaslet's relevant medical history in detail. Substantial evidence supports the ALJ's determination that Heaslet is limited to the

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 11**

exertional range of light work activity with modifications to accommodate his pain-related impairments.

The Court finds that the administrative record contains substantial evidence supporting the ALJ's determination that Heaslet is not disabled as that term is defined and used in the Social Security Act, nor has that determination been shown to be the result of legal error.

## RECOMMENDATION

It is recommended that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until November 3, 2005. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal

conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until November 3, 2005 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED OCTOBER 13, 2005.

/s/ Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 13**